FILED
8/21/2020 11:27 PM
FELICIA PITRE
DISTRICT CLERK
DALLAS CO., TEXAS
Belinda Hernandez DEPUTY

No. DC-20-11762

| | | |
|---|---|---|
| ANDES CAPITAL FINANCING LLC, | § | IN THE DISTRICT COURT |
| | § | |
| PLAINTIFF, | § | |
| | § | |
| v. | § | E-101ST JUDICIAL DISTRICT |
| | § | |
| CROSSED KEYS LLC AND BRIAN WEAVER, | § | |
| | § | |
| DEFENDANTS. | § | |
| | § | DALLAS COUNTY, TEXAS |

### PLAINTIFF'S ORIGINAL PETITION

Andes Capital Financing LLC ("Plaintiff" or "Andes") files this Original Petition against Defendants Crossed Keys ("Crossed Keys") and Brian Weaver ("Weaver") (collectively, "Defendants"). In support thereof, Plaintiff respectfully shows the Court as follows:

### DISCOVERY CONTROL PLAN

1. Discovery shall be conducted under Level 2 of Rule 190 of the TEXAS RULES OF CIVIL PROCEDURE.

2. Pursuant to Rule 47 of the TEXAS RULES OF CIVIL PROCEDURE, Plaintiff states that it seeks monetary relief over $1,000,000.00.

### PARTIES

3. Plaintiff is a Limited Liability Company organized and existing under the laws of the state of Texas with its principal place of business in Dallas County, Texas.

4. Defendant Crossed Keys is a foreign corporation existing under the laws of the State of Kansas with its principle place of business in Leawood, Kansas. Defendant may be served with process by and through Brian Weaver, at 5251 West 116th Place, Suite 200, Leawood Kansas 66221. Defendant may also be served *via* service of process on the Texas Secretary of State. The Texas Secretary of State serves as the agent for service on Defendant because Defendant is non-

resident that is engaged in continuous and systematic business in Texas. Defendant does not maintain a regular place of business in Texas, nor does it have a designated agent for service of process, but (1) Plaintiff's claims arise out of and are directly related to Defendant's business in Texas, and (2) Plaintiff's claims arise out of and are directly related to contractual breaches committed in Texas.

5. Defendant Brian Weaver is an owner of Defendant Crossed Keys. Defendant Weaver may be served with process at 4303 W. 119th St, Leawood, KS, 66209 or wherever he may be found. Defendant Weaver may also be served *via* service of process on the Texas Secretary of State. The Texas Secretary of State serves as the agent for service on Defendant Weaver because Defendants is non-resident that is engaged in continuous and systematic business in Texas. Defendant does not maintain a regular place of business in Texas, nor does he have a designated agent for service of Process, but (1) Plaintiff's claims arise out of and are directly related to Defendant Weaver's business in Texas, and (2) Plaintiff's claims arise out of and are directly related to torts committed in Texas and/or directed at parties in Texas.

## JURISDICTION AND VENUE

6. This Court has jurisdiction over this matter because the amount in controversy exceeds this Court's minimum jurisdictional amount. Moreover, Defendants have direct and continuing contacts with the state of Texas, and on information and belief, it has agents and/or representatives working within the state of Texas. In addition: (1) Plaintiff's claims arise out of and are directly related to Defendants' business in Texas, and (2) Plaintiff's claims arise out of and are directly related to contractual tortious conduct and/or breaches of contract that Defendants committed in Texas. Therefore, based on, *inter alia*, its continuous and systematic contacts with Texas, Defendants purposely availed themselves of the privilege of conducting activities in Texas,

and they have subjected themselves to the jurisdiction of Texas Courts.

7. Venue is proper in this Court pursuant to Texas Civil Practice and Remedies Code §15.002 because all or a substantial part of the events or omissions giving rise to this claim occurred in Dallas County, and/or because Plaintiff resides in Dallas County. Moreover, venue is also proper in this Court pursuant to § 15.035 inasmuch as the contracts that form the basis of this suit are performable in Dallas County, Texas.

### FACTS APPLICABLE TO ALL CLAIMS

### Brief Background

8. This is a good old fashioned "shareholder" dispute involving a busines known as Torch Research LLC ("Torch"). Defendant Cross Keys is the majority owner of Torch; Plaintiff is a minority owner. Defendant Weaver owns and/or controls Cross Keys, and, as a result, Defendant Weaver essentially believes that he can "call the shots" with regard to when, what, and how things occur with Torch. Not surprisingly, Plaintiff disagrees (based on the terms and conditions of Torch's valid and enforceable operating agreement signed by all parties to this suit).

9. By all known accounts, Torch is presently a hugely-successful, multi-million dollar business. The problem is that Torch was not always as successful as it is today. In fact, Torch did not even exist prior to 2017. Indeed, back in early 2017, Torch's current CEO, Brian Weaver, needed crucial and "life saving" capital/funding to establish and to create a business that would ultimately become the current multi-million dollar enterprise. As a result, Defendant Weaver reached out to Plaintiff to secure the crucial capital/investment to start the entity that is now the highly-profitable Torch Research LLC.

10. After negotiations with Weaver, Plaintiff—a very successful entity in its own right—agreed to invest a significant sum of money in Weaver's yet-to-be-established entity

(Torch). To that end, on or around March 3, 2017, the parties executed the *Operating Agreement of Torch Research LLC* (the "Operating Agreement"). Pursuant to the Operating Agreement, Plaintiff is an 8.67% owner of Torch. Defendant Cross Keys owns 90% of Torch's membership interest. Moreover, Brian Weaver, who owns/controls Cross Keys, currently holds himself out as the Chief Executive Officer of Torch.

### The Current Dispute

11. The current dispute revolves around Defendants' refusal to comply with the valid and enforceable Operating Agreement, and their purported attempt to simply "get rid of" Plaintiff. Now that Torch is highly profitable—which is a far cry from when Defendants needed Plaintiff's help—Defendants now refuse to provide even the most basic of business information. Indeed, after months of Plaintiff's informal attempts to obtain business information from Defendants, Plaintiff was forced to retain counsel to obtain the information to which it was/is rightfully entitled. To that end, on or around July 20, 2020, Plaintiff's counsel sent correspondence to Defendants stating as follows:

> Dear Mr. Weaver:
>
> Please be advised that my law firm has been retained to represent Link America Group ("Link") in its efforts to obtain business information related to Torch Research LLC ("Torch"). As you are aware, Link has made several requests for information related to Torch's books and records, but it has been unsuccessful in receiving the specific information that it seeks. While Link appreciates that you personally provided a box of documents to Mr. Carlos Carpizo during his recent trip to Kansas City, the information contained in that box did not include certain of the financial information Link requested (including, but not limited to, the most recent 2019 financial statements). Although Link regrets having to hire me to accomplish this, I have been asked to assist it in gaining access to certain information related to Torch's financials.
>
> Pursuant to Torch's Operating Agreement, Link is a "Series A Preferred Member" that holds a Share Interest of 10%, along with management rights on Torch's Board of Managers (*see* section 4.1). As such, Link is entitled to examine, inspect, review, and copy all of Torch's books and records. *See* 6 *Del. C.* § 18-

305(a)-(b); *see also* TEX. BUS. ORG. CODE § 3.153 ("Each owner or member of a filing entity may examine the books and records of the filing entity maintained under Section 3.151 and other books and records of the filing entity to the extent provided by the governing documents of the entity and the title of this code governing the filing entity.") *see also id.* at § 101.502 ("A member of a limited liability company . . . on a written request and for a proper purpose, may examine and copy at any reasonable time . . . records required under Sections 3.151 and 101.501 . . . .").

As both a Member and a Manager of Torch, Link is entitled to review Torch's books and records for the purpose of, among other things: valuing the Members' interest in the LLC, evaluating an offer to purchase shares, testing the propriety of the LLC's disclosures, and determine the independence of the Company's management. Moreover, Article 2.5 of the Operating Agreement provides each Member unfettered access to Torch's books and records. Therefore, the purpose of Link's narrowly-tailored request for information is to determine, among other things, the following: (1) the value of the Members' interest, (2) the existence and/or amount of any offer to purchase shares, and (3) the dates and amounts of any distributions.

To that end, Link is in entitled to, and hereby requests, <u>access</u> to the following documents and information:

(1) Records that Torch is required to maintain under Delaware and Texas law, which includes the following:

　　a. Books and records of accounts; and

　　b. A current record of the name and mailing address of each owner or member of the filing entity.

(2) Records that Torch is required to keep under applicable law, which includes the following:

　　a. A current list that states the percentages or other interest in the limited liability company owned by each member;

　　b. A copy of Torch's federal, state, and local tax information or tax returns for each of the three (3) preceding years;

　　c. A copy of Torch's formation documents, including any amendments to or restatements of the certificate of formation;

　　d. A copy of Torch's company agreement and any amendments thereto (if any);

  e. An executed copy of any powers of attorney;

  f. A written statement of:

   1. The amount of cash contribution and a description and statement of the agreed value of any other contributions made or agreed to be made by each member;

   2. The dates any additional contributions are to be made by a member;

   3. Any event the occurrence of which requires a member to make additional contributions;

   4. Any event the occurrence of which requires the winding up of the company; and

   5. The date each member became a member of the company.

(3) Records that Link is entitled to pursuant to applicable law, which includes the following:

  a. All of Torch's bank statements since its inception;

  b. All documents that Torch has provided to any CPA, tax attorney, or tax preparer; and

  c. All documents evidencing Torch's purchase and distribution of inventory.

  Pursuant to applicable law, Link or its chosen representative, is entitled to examine the requested documents within five (5) days of the date of this letter. Therefore, Link hereby requests that a formal response to this request be provided no later than **Monday, July 27th, 2020.** As we all know, and as you informed Mr. Carpizo, COVID-19 has changed how business is conducted. Therefore, Link respectfully requests that, in Torch's response, certain documents be provided via electronic transmission (whether through Dropbox, Google Docs, or any other secure platform that Torch elects). Considering all of the above, what Link is entitled to—and in order to prioritize and to move things along—Link requests that, at minimum, Torch's response includes the most recent 2019 financial statements, which include the following: balance sheet, income statement and cash flow. As previously discussed with you, Link is very interested in, and hereby specifically requests Deloitte's report on the valuation of Torch, along with any and all "valuations" and/or "offers" thereafter.

  Thank you in advance for your cooperation in this matter. Please contact me at your earliest convenience if you wish to discuss this matter further.

Ex. A.  (Plaintiff's July 20, 2020 Written Request for Busines Records)

12. Rather than complying with Plaintiff's reasonable (and legal) request, Defendants simply made matters worse by deciding to "dig in" and illegally attempt to oust Plaintiff from the very entity that would not have been possible without Plaintiff's investment.

13. In fact, after Plaintiff was forced to retain counsel to obtain very basic business information, Defendants unilaterally—and in violation of the Operating Agreement—sent Plaintiff a defective "Notice of Meeting," pursuant to which Defendant purports to "discuss and approve a proposed merger of Torch Research LLC . . . with and into Crossed Keys LLC . . . pursuant to which [Plaintiffs'] Membership Interests will be cancelled . . . ." *See* Ex. B.  Pursuant to that "Notice," it appears that Defendants—in total violation of the Operating Agreement—intend to unilaterally and illegally dispose of Plaintiff's ownership interest in Torch by approving a "merger" of Torch and Defendant Crossed Keys.  *See* Ex. B.

14. Torch's Operating Agreement has clear and fully-enforceable prohibitions on the transfer or assignment of any members' membership interests.  But now—knowing that the Operating Agreement does not allow for a transfer or assignment of membership interests—Defendants are attempting to make an "end run" around the Operating Agreement's transfer restrictions by simply calling the transfer a "merger."

15. The bottom line is that Defendants have engaged in egregiously tortious contractual and extracontractual conduct aimed at stealing away from Plaintiff the investment that Plaintiff made, along with the benefit of Plaintiff's multi-million dollar membership interest in Torch.  As a result of Defendants' conduct, Plaintiff hereby seeks the Court's assistance in adjudicating the causes of action below.

## CAUSES OF ACTION

### COUNT 1:
### BREACH OF CONTRACT

16. Plaintiff repeats and incorporates by reference the preceding paragraphs as if set forth fully herein.

17. As described above, a valid and enforceable contract exists by and between the Parties. Plaintiff is a party to a valid and enforceable Operating Agreement which was executed as a result of a large sum of money that Plaintiff provided to Defendants (consideration). By the conduct described above, a Defendants breached their contract with Plaintiff by failing to abide by their contractual obligations.

18. As a direct and proximate result of Defendants' conduct, Plaintiff has suffered and will continue to suffer damages in an amount that exceeds the minimum jurisdictional limit of this Court. Plaintiff, therefore, seeks and is entitled to a judgment against the Defendants for all damages caused by Defendants' conduct.

### COUNT 2:
### DECLARATORY JUDGMENT

19. Plaintiff repeats and incorporates by reference the preceding paragraphs as if fully set forth herein.

20. Pursuant to Section 37.001, et seq. of the Texas Civil Practice & Remedies Code (the "Uniform Declaratory Judgments Act"), a justiciable controversy concerning the rights, status, and legal relations exists by and among the parties. Therefore, pursuant to the Uniform Declaratory Judgments Act, Plaintiffs request a declaratory judgment declaring as follows:

    a. Plaintiff and Defendants are signatories to a valid and enforceable Operating Agreement that governs relationship between the parties as it

        relates to, among other things, membership interests, transfers, and distributions.

    b.    Article 5 (section 5.4) of the Operating Agreement specifically provides that provides that "the Share Interests of a Member in the Company may not be Transferred or assigned in any manner voluntarily or involuntarily without the unanimous written consent of the other Members of the Company then entitled to be treated as Members and to vote hereunder."

    a.    Article 5 (Section 5.5 and 5.6) of the Operating Agreement specifically prohibit the transfer of members' rights without consent and provide that the consequences of wrongful transfer (or attempted transfer) results in the offending members' forfeiture of their membership interest.

    b.    Any Members' attempt to merge Torch with another company—particularly with Cross Keys—is null and void and will result in the offending Members' withdrawal from Torch and forfeiture of such Members' shares.

    c.    The Notice of Meeting (Ex. B) dated August 14, 2020 is inadequate and deficient as it does not comply with Section 4.10 of Torch's Operating Agreement (proper notice). Therefore, any actions taken without proper notice are null and void *ab inicio*.

21.    As established by the facts set forth above, there is an actual, present, and practical need for declaratory relief. A justiciable controversy exists in this matter because (1) there is a real and substantial controversy between the parties, and (2) the controversy is one that will actually be determined by the judicial declaration sought.

## DAMAGES

22. Plaintiff repeats and incorporates by reference the preceding paragraphs as if fully set forth herein.

23. Through the acts of the Defendants, as mentioned in the preceding paragraphs, Plaintiff faces damage to its business reputation. This kind of injury to Plaintiff's business reputation is irreparable, and Plaintiff therefore seeks general and special damages in a sum within the jurisdictional limits of this Court.

24. Moreover, as mentioned in the preceding paragraphs, Defendants' tortious conduct has caused significant damage to Plaintiff. Plaintiffs therefore seeks specific damages in a sum within the jurisdictional limits of this Court.

25. Finally, Plaintiff's injury resulted from Defendants' fraud, malice, and/or gross negligence, which entitles Plaintiff to exemplary damages under Texas Civil Practice & Remedies Code section 41.003.

## ATTORNEYS' FEES

26. Plaintiff repeats and incorporates by reference the preceding paragraphs as if set forth fully herein.

27. As a result of Defendants' conduct, Plaintiff has been forced to retain the undersigned attorney in connection with this action. Pursuant to Chapter 38 of the TEXAS CIVIL PRACTICE AND REMEDIES CODE, and/or other applicable law, Plaintiff is entitled to recover a reasonable sum for attorneys' fees incurred through the trial and, if necessary, the appeal of this cause.

28. Plaintiff is also entitled to recover reasonable and necessary attorney fees and court costs incurred in prosecuting this action pursuant to The Declaratory Judgment Act, section 37.008 of the Texas Civil Practice and Remedies Code.

## CONDITIONS PRECEDENT

29. All conditions precedent to the claims asserted herein have occurred or have been waived.

## RELIEF REQUESTED

30. Plaintiff requests that Defendants be cited to appear and answer this suit, and that upon final trial of this cause, the Court enter judgment in favor of Plaintiff and against Defendants for the following:

   a. Plaintiff's actual damages in an amount within the jurisdictional limits of this Court;

   b. Plaintiff's special and specific damages in an amount within the jurisdictional limits of this Court;

   c. A declaratory judgment declaring as follows:

      1. Plaintiff and Defendants are signatories to a valid and enforceable Operating Agreement that governs relationship between the parties as it relates to, among other things, membership interests, transfers, and distributions.

      2. Article 5 (section 5.4) of the Operating Agreement specifically provides that provides that "the Share Interests of a Member in the Company may not be Transferred or assigned in any manner voluntarily or involuntarily without the unanimous written consent

        of the other Members of the Company then entitled to be treated as Members and to vote hereunder."

    3. Article 5 (Section 5.5 and 5.6) of the Operating Agreement specifically prohibit the transfer of members' rights without consent and provide that the consequences of wrongful transfer (or attempted transfer) results in the offending members' forfeiture of their membership interest.

    4. Any Members' attempt to merge Torch with another company—particularly with Cross Keys—is null and void and will result in the offending Members' withdrawal from Torch and forfeiture of such Members' shares.

    5. The Notice of Meeting (Ex. B) dated August 14, 2020 is inadequate and deficient as it does not comply with Section 4.10 of Torch's Operating Agreement (proper notice). Therefore, any actions taken without proper notice are null and void *ab inicio*.

d.    Punitive/Exemplary damages to the extent permitted by law;

e.    Pre-judgment and post-judgment interest thereon to the extent permitted by law;

f.    Reasonable attorney fees and expenses as allowed by law;

g.    Costs of suit; and

h.    Such other and further relief, whether general or special, at law or in equity, to which Plaintiff may be justly entitled and which the Court deems appropriate.

                Respectfully submitted,

By:   /s/ *Jeronimo Valdez*
      R. Jeronimo Valdez
      Texas Bar No. 24042079
      jvaldez@vwlegal.com

**VALDEZ | WASHINGTON LLP**
Highland Park Place
4514 Cole Avenue, Suite 600
Dallas, Texas 75205
(214) 361-7800 – Dallas (Main Office)
(469) 327-2629 – Fax
jvaldez@vwlegal.com | www.vwlegal.com

**ATTORNEYS FOR PLAINTIFF**

# VALDEZ|WASHINGTON LLP
*Attorneys and Counselors*

**EXHIBIT A**

Highland Park Place
4514 Cole Avenue | Suite 600 | Dallas, Texas 75205
T: 214.361.7800 | F: 469.327.2629
jvaldez@vwlegal.com

July 20, 2020

Mr. Brian Weaver  *Via* **Facsimile: 202-570-7049**
4303 W. 119th St.  *Via* **Email: brian.weaver@torch.ai**
Leawood, KS 66209  *Via* **CMRRR**

Re:   Written Request for Business Records for Torch Research LLC

Dear Mr. Weaver:

Please be advised that my law firm has been retained to represent Link America Group ("Link") in its efforts to obtain business information related to Torch Research LLC ("Torch"). As you are aware, Link has made several requests for information related to Torch's books and records, but it has been unsuccessful in receiving the specific information that it seeks. While Link appreciates that you personally provided a box of documents to Mr. Carlos Carpizo during his recent trip to Kansas City, the information contained in that box did not include certain of the financial information Link requested (including, but not limited to, the most recent 2019 financial statements). Although Link regrets having to hire me to accomplish this, I have been asked to assist it in gaining access to certain information related to Torch's financials.

Pursuant to Torch's Operating Agreement, Link is a "Series A Preferred Member" that holds a Share Interest of 10%, along with management rights on Torch's Board of Managers (*see* section 4.1). As such, Link is entitled to examine, inspect, review, and copy all of Torch's books and records. *See* 6 *Del. C.* § 18-305(a)-(b); *see also* TEX. BUS. ORG. CODE § 3.153 ("Each owner or member of a filing entity may examine the books and records of the filing entity maintained under Section 3.151 and other books and records of the filing entity to the extent provided by the governing documents of the entity and the title of this code governing the filing entity.") *see also id*. at § 101.502 ("A member of a limited liability company . . . on a written request and for a proper purpose, may examine and copy at any reasonable time . . . records required under Sections 3.151 and 101.501 . . . .").

As both a Member and a Manager of Torch, Link is entitled to review Torch's books and records for the purpose of, among other things: valuing the Members' interest in the LLC, evaluating an offer to purchase shares, testing the propriety of the LLC's disclosures, and determine the independence of the Company's management. Moreover, Article 2.5 of the Operating Agreement provides each Member unfettered access to Torch's books and records. Therefore, the purpose of Link's narrowly-tailored request for information is to determine, among other things, the following: (1) the value of the Members' interest, (2) the existence and/or amount of any offer to purchase shares, and (3) the dates and amounts of any distributions.

www.vwlegal.com

| Dallas | Ft. Worth | Frisco | Houston |
|---|---|---|---|
| 4514 Cole Avenue \| Suite 600 | 5601 Bridge Street \| Suite 300 | 1125 Legacy Drive \| Suite 350 | 10777 Westheimer \| Suite 1100 |
| Dallas, Texas 75205 | Ft. Worth, Texas 76112 | Frisco, Texas 75034 | Houston, Texas 77042 |

Mr. Brian Weaver
July 20, 2020
Page 2

**EXHIBIT A**

To that end, Link is in entitled to, and hereby requests, <u>access</u> to the following documents and information:

(1) Records that Torch is required to maintain under Delaware and Texas law, which includes the following:

    a. Books and records of accounts; and

    b. A current record of the name and mailing address of each owner or member of the filing entity.

(2) Records that Torch is required to keep under applicable law, which includes the following:

    a. A current list that states the percentages or other interest in the limited liability company owned by each member;

    b. A copy of Torch's federal, state, and local tax information or tax returns for each of the three (3) preceding years;

    c. A copy of Torch's formation documents, including any amendments to or restatements of the certificate of formation;

    d. A copy of Torch's company agreement and any amendments thereto (if any);

    e. An executed copy of any powers of attorney;

    f. A written statement of:

        1. The amount of cash contribution and a description and statement of the agreed value of any other contributions made or agreed to be made by each member;

        2. The dates any additional contributions are to be made by a member;

        3. Any event the occurrence of which requires a member to make additional contributions;

        4. Any event the occurrence of which requires the winding up of the company; and

        5. The date each member became a member of the company.

(3) Records that Link is entitled to pursuant to applicable law, which includes the following:

www.vwlegal.com

| Dallas | Ft. Worth | Frisco | Houston |
|---|---|---|---|
| 4514 Cole Avenue │ Suite 600 | 5601 Bridge Street │ Suite 300 | 1125 Legacy Drive │ Suite 350 | 10777 Westheimer │ Suite 1100 |
| Dallas, Texas 75205 | Ft. Worth, Texas 76112 | Frisco, Texas 75034 | Houston, Texas 77042 |

Mr. Brian Weaver
July 20, 2020
Page 3

**EXHIBIT A**

    a. All of Torch's bank statements since its inception;

    b. All documents that Torch has provided to any CPA, tax attorney, or tax preparer; and

    c. All documents evidencing Torch's purchase and distribution of inventory.

Pursuant to applicable law, Link or its chosen representative, is entitled to examine the requested documents within five (5) days of the date of this letter. Therefore, Link hereby requests that a formal response to this request be provided no later than **Monday, July 27th, 2020.** As we all know, and as you informed Mr. Carpizo, COVID-19 has changed how business is conducted. Therefore, Link respectfully requests that, in Torch's response, certain documents be provided via electronic transmission (whether through Dropbox, Google Docs, or any other secure platform that Torch elects). Considering all of the above, what Link is entitled to—and in order to prioritize and to move things along—Link requests that, at minimum, Torch's response includes the most recent 2019 financial statements, which include the following: balance sheet, income statement and cash flow. As previously discussed with you, Link is very interested in, and hereby specifically requests Deloitte's report on the valuation of Torch, along with any and all "valuations" and/or "offers" thereafter.

Thank you in advance for your cooperation in this matter. Please contact me at your earliest convenience if you wish to discuss this matter further.

        Sincerely,
        **VALDEZ | WASHINGTON LLP**

        By: R. Jeronimo Valdez

cc: Client

www.vwlegal.com

Dallas — 4514 Cole Avenue | Suite 600, Dallas, Texas 75205
Ft. Worth — 5601 Bridge Street | Suite 300, Ft. Worth, Texas 76112
Frisco — 1125 Legacy Drive | Suite 350, Frisco, Texas 75034
Houston — 10777 Westheimer | Suite 1100, Houston, Texas 77042

Torch Research, LLC<br>
4303 W. 119th Street<br>
Leawood, Kansas 66209

**EXHIBIT B**

Andes Capital Financing, LLC
7139 Hillgreen Drive
Dallas, Texas 75214

Coevolution LLC
14140 Edgecrest Dr.
Dallas, Texas 75254

Crossed Keys LLC
5251 West 116th Place, Suite 200
Leawood, Kansas 66221

August 14, 2020

      Re: <u>Notice of Meeting of Members in Connection with Proposed Merger</u>.

 Gentlemen:

Reference is hereby made to the Operating Agreement of Torch Research, LLC, dated as of March 3, 2017 (the "<u>Operating Agreement</u>").  Capitalized terms used herein and not otherwise defined shall have the meanings ascribed to such terms in the Operating Agreement.

This letter shall constitute notice to you that, in accordance with Section 4.10 of the Operating Agreement, Crossed Keys LLC has called a meeting of Members (the "<u>Meeting</u>") to discuss and approve a proposed merger of Torch Research, LLC (the "<u>Company</u>") with and into Crossed Keys LLC (the "<u>Merger</u>"), pursuant to which (x) all of the Common Membership Interests will be cancelled and, as consideration therefor, the holders of such Common Membership Interests immediately prior to the Merger will be entitled to receive a specified amount of common equity interests in Crossed Keys LLC, which amount shall be disclosed prior to the Meeting and (y) all of the Series A Membership Interests will be cancelled and, as consideration therefor, the holders of such Series A Membership Interests immediately prior to the Merger will be entitled to receive a specified amount of cash, which amount shall be disclosed prior to the Meeting.

In order to ensure the fairness of the consideration to be received by the Members in connection with the proposed Merger, the Company will engage a valuation firm to undertake a valuation of the Company.

The Meeting will be held on August 25, 2020 by means of remote communication (e.g., Zoom). Additional log-in information for the Meeting will be provided separately.

Sincerely,

_____
Brian Weaver, Chief Executive Officer,
Torch Research, LLC

**Automated Certificate of eService**

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

R. Jeronimo Valdez on behalf of R. Jeronimo Valdez
Bar No. 24042079
jvaldez@vwlegal.com
Envelope ID: 45613917
Status as of 8/24/2020 10:48 AM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| R. Jeronimo Valdez | | jvaldez@vwlegal.com | 8/21/2020 11:27:35 PM | SENT |
| Flora Anguiano | | flora@vwlegal.com | 8/21/2020 11:27:35 PM | SENT |