UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| ANDES CAPITAL FINANCING LLC; COEVOLUTION LLC, § § § *Plaintiffs*, § § v. § § CROSSED KEYS LLC; § BRIAN WEAVER; and JAE CHA, § § *Defendants*. | Civil Action No. 3:20-CV-03027-X |

## MEMORANDUM OPINION AND ORDER

Andes Capital Financing LLC (Andes Capital) and Coevolution LLC sued Crossed Keys LLC (Crossed Keys), Brian Weaver, and Jae Cha alleging the defendants breached contractual obligations under an Operating Agreement between Andes and Crossed Keys and committed a variety of torts. Crossed Keys filed a Motion to Dismiss for Lack of Personal Jurisdiction [Doc. No. 14], as did Weaver [Doc. No. 16]. Following an evidentiary hearing and for the reasons below,[1] the Court **GRANTS** the motions to dismiss.

### I. Factual Background

Andes Capital and Coevolution allege that the defendants breached their duties under the Operating Agreement between Andes Capital, Coevolution, and

---

[1] The Court sets forth in this memorandum opinion and order its findings of fact and conclusions of law. *See* FED. R. CIV. P. 52(a)(1).

1

Crossed Keys, engaged in unlawful corporate conduct, and made fraudulent misrepresentations that the plaintiffs relied upon. This action was originally filed in Dallas County District Court and the defendants removed the case to this Court based on diversity jurisdiction consistent with 28 U.S.C. §§ 1441 and 1446. Defendants filed motions to dismiss pursuant to Rule 12(b)(2).

The contract at issue here is an Operating Agreement. The negotiations for the Operating Agreement partially took place in Dallas, Texas for one day. During that one-day visit, representatives of Crossed Keys proposed that Andes Capital invest in Torch, which is a Delaware corporation based in Kansas. The Operating Agreement prohibited the transfer or assignment of any members' ownership interests without the written consent of all members. In 2020, the defendants approved a merger of Torch with Crossed Keys, allegedly in violation of the provisions of the Operating Agreement because it would seemingly terminate Andes's interest in Torch.

## II. Legal Standards

A personal jurisdiction inquiry begins with determining whether the forum state has a long arm statute and if that long arm statute is less than the requirements provided by the Due Process Clause of the 14th Amendment of the Constitution. Texas has a long arm statute, and it provides a constitutional maximum.[2] The test for personal jurisdiction can be met either by satisfying general jurisdiction or specific jurisdiction.[3] For either specific or general jurisdiction, courts look to whether the

---

[2] *Jones v. Petty-Ray Geophysical Geosource, Inc.*, 954 F.2d 1061, 1067–68 (5th Cir. 1992) (citing *Schlobohm v. Schapiro*, 784 S.W.2d 355, 356 (Tex. 1990)).

[3] *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011).

defendant has had minimum contacts with the forum, such that the suit does not offend notions of fair play and substantial justice.[4]

To satisfy the general jurisdiction minimum contacts test for corporate and corporeal persons, a defendant's contacts with the forum must be sufficiently continuous and systematic as to make the defendant "essentially at home" in the forum.[5] For general jurisdiction over corporeal persons, the paradigmatic forum is the person's domicile.[6]

To satisfy minimum contacts for specific jurisdiction, courts require a determination of purposeful availment.[7] This analysis chiefly looks to whether the defendant availed himself of the privilege of conducting activities in that state.[8] Specifically, the defendant must have purposefully reached beyond its home. A defendant can achieve this by, for example, exploiting a market, entering and seeking to maintain an extensive contractual relationship there,[9] enjoying the benefits of and protection of the forum's laws, the defense of their property, and enforcement of contacts there.[10]

---

[4] *Int'l Shoe Co. v. State of Wash., Off. of Unemployment Comp. & Placement*, 326 U.S. 310, 316 (1945).

[5] *Goodyear*, 564 U.S. at 919.

[6] *Id.* at 924.

[7] *Int'l Shoe Co.*, 326 U.S. at 316.

[8] *Hanson v. Denckla*, 357 U.S. 235, 253 (1958).

[9] *Walden v. Fiore*, 571 U.S. 277, 285 (2014).

[10] *Int'l Shoe Co.*, 326 U.S. at 319.

Next, the harm must arise from or relate to the contact with the forum.[11] As the Supreme Court noted this year, the "arise out of" requirement is a causational requirement, but the "relates to" requirement is that the harm must be sufficiently related to the harm to warrant specific jurisdiction.[12]

Finally, courts must evaluate a set of reasonableness factors once personal jurisdiction has been found. Those factors are the interest of the forum state, the burden to defendants in defending in the forum, the interest of the plaintiff in obtaining timely relief, the interstate judicial system's interest in the most efficient end of controversies, and the interest of the states in furthering substantive social policies.[13]

## III. Analysis

### A. Crossed Keys

#### *1. General Jurisdiction*

Andes argues this Court has general jurisdiction over Crossed Keys because Crossed Keys has such systemic and continuous contacts with Texas that Crossed Keys is rendered at home in Texas. Crossed Keys argues this cannot be the case because, while Crossed Keys has contacts with Texas, those contacts are not sufficient to make Crossed Keys essentially at home in Texas.

The Court finds there is no general jurisdiction over Crossed Keys in Texas. The standard for general jurisdiction is systematic and continuous contacts that

---

[11] *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1025 (2021).

[12] *Id.* at 1026.

[13] *Asahi Metal Indus. Co. v. Superior Ct. of Cal., Solano Cty.*, 480 U.S. 102, 113 (1987).

render the defendant essentially at home in the forum.[14] Typically, these contacts are the defendant's place of incorporation and principal place of business; the only exception to this is when the defendant's contacts are so substantial and of such a nature that the defendant may be considered at home in the forum.[15]

In *Frank v. P N K (Lake Charles) L.L.C.*, the Fifth Circuit noted that the defendant company lacked physical presence in the forum state on account of its operations being located outside the forum state, having no employees in the forum state, no forum state license, no offices in the forum state, no bank account in the forum state, and not paying taxes in the forum state.[16] Essentially, no part of the defendant's general business took place in the forum state; thus, although the defendant conducted business with Texans, those grounds could not confer general jurisdiction.[17]

Here, Crossed Keys's contacts fall short of rendering Crossed Keys at home in Texas. Andes identifies the following Crossed Keys contacts with Texas: (1) moving at most 16 employees from Crossed Keys's payroll to Link America LLC's payroll, (2) Crossed Keys's request for and benefits received by moving the employees onto Link America's payroll, and (3) Crossed Keys's regular communications with Andes. As in *Frank*, these show Crossed Keys has done business with Texans, but it cannot be said

---

[14] *Goodyear*, 564 U.S. at 919; *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014).

[15] *Frank v. P N K (Lake Charles) L.L.C.*, 947 F.3d 331, 337–38 (5th Cir. 2020).

[16] *Id.* at 339.

[17] *Id.*

Crossed Keys is essentially at home in Texas.[18] Therefore, this Court has no general jurisdiction over Crossed Keys.

## 2. *Specific Jurisdiction*

Andes argues this Court has personal jurisdiction over Crossed Keys because Crossed Keys voluntarily reached out to Texas-based Andes to receive investment funds, Crossed Keys travelled to Texas to make a business proposal, and the parties partially negotiated the agreement in Texas at the business proposal meeting. This is insufficient to grant this Court specific jurisdiction over Crossed Keys.

The Fifth Circuit has a three-step analysis for specific jurisdiction that asks:

> (1) whether the defendant has minimum contacts with the forum state, i.e., whether it purposely directed its activities toward the forum state or purposefully availed itself of the privileges of conducting activities there; (2) whether the plaintiff's cause of action arises out of or results from the defendant's forum-related contacts; and (3) whether the exercise of personal jurisdiction is fair and reasonable.[19]

The Court must note that the United States Supreme Court recently changed a component of this test. The Supreme Court notes that relatedness "contemplates that some relationships will support jurisdiction without a causal showing. That does not mean anything goes. In the sphere of specific jurisdiction, the phrase 'relate to' incorporates real limits, as it must to adequately protect defendants foreign to a

---

[18] *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 411 (1984) applied the old standard of "systematic and continuous contacts" without the "at home" addition. Even applying the lower standard, the Fifth Circuit did not find general jurisdiction over the defendant. Helicopteros (Helicol) was incorporated in Colombia and maintained its principal place of business there. Helicol's contacts with Texas were limited to: (1) sending its Chief Executive Officer to Houston for contract negotiation, (2) accepting checks issued in Texas into Helicol's New York bank account, (3) purchasing equipment from a Texas manufacturer, and (4) sending Helicol's personnel into Texas for training. The Supreme Court determined these contacts were insufficient to warrant general jurisdiction.

[19] *Libersat v. Sundance Energy, Inc.*, 978 F.3d 315, 318–19 (5th Cir. 2020).

forum."[20]  The concept of relatedness must have some real limitation to prevent relatedness from losing all meaning, because, at a certain point, everything is interrelated.[21]

The Fifth Circuit has further elaborated on the analysis in breach of contract claims.

> Although a single act by the defendant directed at the forum state can be enough to confer personal jurisdiction if that act gives rise to the claim being asserted, entering into a contract with an out-of-state party, without more, is not sufficient to establish minimum contacts. Rather, in a breach of contract case, to determine whether a party purposefully availed itself of a forum, a court must evaluate prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing . . . .[22]

"A touchstone of this analysis is the place of contractual performance."[23]

*Holt Oil & Gas Corp. v. Harvey* is perhaps the most factually on-point case in this area, though it must be noted *Holt* came before *Ford*'s bifurcated "arises from or relates to" analysis. In *Holt*, the Fifth Circuit ruled that exercising specific jurisdiction was improper in Texas, because, although the allegedly breached contract was cemented in Texas, Oklahoma law governed the contract and material performance of the contract was centered in Oklahoma.[24]

---

[20] *Ford*, 141 S. Ct. at 1026.

[21] *See Ford*, 141 S. Ct. at 1033–34 (Alito, J., concurring) (explaining relatedness can be difficult to limit, as it has a "potentially boundless reach").

[22] *Latshaw v. Johnston*, 167 F.3d 208, 211 (5th Cir. 1999) (cleaned up).

[23] *Sayers Constr., L.L.C. v. Timberline Constr., Inc.*, 976 F.3d 570, 574 (5th Cir. 2020) (cleaned up).

[24] *Holt*, 801 F.2d at 778.

The Fifth Circuit more fully explained the "centered on" standard in *Brammer Engineering, Inc. v. E. Wright Mountain Ltd., Partnership*.[25] In *Brammer*, the plaintiff and the defendant signed a joint operating agreement for a company based in Texas and whose operations would take place in Texas.[26] There, the Fifth Circuit determined there was no specific jurisdiction in Louisiana because "the [joint operating agreement] dealt with the operation of an energy prospect in Texas, involved the drilling of wells in Texas, called for Texas law to be the governing law, and chose Texas courts as the forum for resolving disputes arising from the contract."[27] Therefore, the factors to consider when determining specific jurisdiction over an alleged breach of an operating agreement include: the contract's choice of law provision, where the subject company of the operating agreement is located, where the operations of the company will take place, and where the contract was cemented.

In the present case, the operating agreement chose Delaware law to govern the agreement,[28] the place where the subject company is located is Kansas,[29] the place where the operations of the subject company occur is Kansas,[30] and the contract was

---

[25] 307 F. App'x 845 (5th Cir. 2009).

[26] *Id.* at 846.

[27] *Id.* at 849.

[28] Doc. No. 10, Attachment 4 at 27.

[29] Doc. No. 15 at 1.

[30] The location of material performance weighs against jurisdiction elsewhere. *Holt*, 801 F.2d at 778. The Operating Agreement is for the operation of Torch, a limited liability company organized under Delaware law and doing business in Kansas. Doc. No. 10, Attachment 4 at 5–6; Doc. No 15, Attachment 1 at 3. Fundamentally, the operation of a company that is not created by Texas laws and is neither based out of nor does business in Texas is not sufficiently related to Texas.

8

executed virtually.[31] Therefore, based on these facts, this Court does not have specific jurisdiction over Crossed Keys in Texas for the breach of contract claim.

The plaintiffs highlighted that contract negotiations occurred in Texas. However, the one day of negotiation in Texas is insufficient to establish personal jurisdiction in Texas—especially when recognizing that the one meeting in Texas was but one discussion among many. According to Mr. Ruzo, subsequent discussions occurred almost every night over the telephone.[32] As instructed by *Burger King* and the Fifth Circuit, the Court must take a highly realistic approach in these breach of contract cases.[33] In taking that highly realistic approach, the Court must consider the motivating principle in purposeful availment, which is that "a defendant will not be haled into court in a jurisdiction solely as a result of random, fortuitous, or attenuated contacts or the unilateral activity of another person or third party."[34]

Crossed Keys's contact with Texas is fortuitous. Being in Texas for one day to make a presentation to a Texas company is fortuitous. This contact is fortuitous in the same way sending communications from Oklahoma to Texas during a contract negotiation is a fortuity.[35] Accordingly, because the contacts do not survive the step

---

[31] Doc. No. 15, Attachment 1 at 4.

[32] Doc. No. 36 at 26:21–27:5.

[33] *Sayers Constr.*, 976 F.3d at 573 (5th Cir. 2020) (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 479 (1985)).

[34] *Choice Healthcare, Inc. v. Kaiser Found. Health Plan of Colo.*, 615 F.3d 364, 369 (5th Cir. 2010).

[35] *Holt*, 801 F.2d at 778.

of fortuity, the Court does not reach the issue of 'arises from or relates to' and there is no purposeful availment.[36]

Andes additionally argues that because the other tortious claims caused harmful effects felt in Texas, Crossed Keys is subject to specific jurisdiction in Texas. The "effects theory" asks not "where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way."[37] "The proper question is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way."[38] As the Fifth Circuit noted, "[w]hen the actual content of communications with a forum gives rise to intentional tort causes of action, this alone constitutes purposeful availment."[39] Thus, because no one alleges the content of the communications or conduct in Texas were tortious themselves, there is no viable "effects theory" of specific jurisdiction. Accordingly, there are no viable theories for specific jurisdiction over Crossed Keys.

Because this Court has neither general jurisdiction or specific jurisdiction over Crossed Keys, this Court does not have personal jurisdiction over Crossed Keys. Therefore, the Court **GRANTS** Crossed Keys's motion to dismiss.

---

[36] True, the Supreme Court highlighted that causation is not required under the "related to" factor in specific jurisdiction in *Ford*. 141 S.Ct. at 1025. But the Court in *Ford* laid out that "arise from or relates to" only applies to jurisdictional contacts that are not "random, isolated, or fortuitous." *Id*. (cleaned up). Because the contacts the plaintiffs raise here are random and fortuitous under binding precedent, this Court cannot proceed to assess whether irrelevant Texas contacts relate to this lawsuit.

[37] *Walden*, 571 U.S. at 290.

[38] *Id.* at 291.

[39] *Wien Air Alaska, Inc. v. Brandt*, 195 F.3d 208, 213 (5th Cir. 1999).

## B. Brian Weaver

### *1. General Jurisdiction*

Andes argues that Weaver's one-day trip to Texas, occasionally passing through airports in Texas, and being a remote advisor to a gym in Texas results in general jurisdiction over Weaver. The Court disagrees. In *Kulko v. Supererior Court of California In & For City & County of San Francisco*,[40] the defendant had spent a three-day military stopover in California and a 24-hour stopover in California during which time defendant was married in California.[41] The United States Supreme Court noted that exercising jurisdiction based on those contacts "would make a mockery of the limitations . . . imposed by the Fourteenth Amendment."[42]

Weaver is a resident of Missouri and has had no systematic and continuous contacts with Texas that would render him "at home" in Texas. Weaver's contacts with Texas are: a one-day trip to Texas, occasionally passing through airports in Texas, and being a remote advisor to a gym in Texas. These do not make Weaver "at home" in Texas. Because the one-day trip to Texas and occasionally passing through airports are not continuous, they cannot be considered in the set of continuous and systematic contacts with Texas. Accordingly, there is only one contact that may yield general jurisdiction. Even if serving as a volunteer remote advisor to a gym in Texas is continuous and systematic, it is certainly not so much so that it renders Weaver at home in Texas. Because the test is the same for individuals and corporations, the

---

[40] 436 U.S. 84 (1978).

[41] *Id.* at 86.

[42] *Id.* at 93.

Court can analogize the contacts sufficient to render a corporation at home to those that ought to render an individual at home. The Fifth Circuit in *Frank* recognized that even sending targeted advertisements into Texas does not render the sender of the advertisements at home in Texas.[43] And while home gyms are all the rage during COVID, sending advice to a gym in Texas does not render Weaver at home in Texas. In other words, Weaver would likely never be seen wearing this t-shirt:



Accordingly, this Court does not have general jurisdiction over Weaver. [44]

## 2. *Specific Jurisdiction*

The Court similarly lacks specific jurisdiction over Weaver. Weaver travelled to Texas in February of 2017 to meet with the Andes Chief Executive Officer, where negotiations involvingto the contract at issue allegedly occurred. Andes argues this

---

[43] *Frank*, 947 F.3d at 339.

[44] Exercising general jurisdiction in a forum that is not the legal home (*i.e.*, domicile, place of incorporation, or principal place of business) of the defendant is an exceptional case. *See Daimler*, 571 U.S. at 139 n.19. If this Court did exercise general jurisdiction over Weaver, anyone who has regular contacts with another person in a different state would be subject to general jurisdiction in that state. Such a situation would render general jurisdiction ordinary rather than exceptional.

contact creates specific jurisdiction over Weaver. However, the fiduciary-shield doctrine typically prohibits exercising personal jurisdiction over the officer or representative of a corporation when the contacts with the forum arise solely from corporate activities in the forum, provided that the corporation is not an alter ego of the defendant.[45] Here, Weaver travelled to Texas to negotiate a contract between the plaintiffs and Crossed Keys, in his capacity as Crossed Keys's company representative. And there is no allegation that Crossed Keys is the alter ego of Weaver. Because his only personal contact with the state of Texas that is related to this suit was in his representative capacity, the fiduciary-shield doctrine prevents an exercise of specific jurisdiction over Weaver.[46] Because this Court has neither specific nor general jurisdiction over Weaver, the Court consequently lacks personal jurisdiction over Weaver. Accordingly, the Court **GRANTS** Weaver's motion to dismiss.

---

[45] *See Stuart v. Spademan*, 772 F.2d 1185, 1197 (5th Cir. 1985) (finding that "the fiduciary-shield doctrine—which holds that an individual's transaction of business within the state solely as a corporate officer does not create personal jurisdiction over that individual though the state has in personam jurisdiction over the corporation—does not apply when courts are willing to disregard the corporate entity, usually on the theory that the individual or subsidiary is the alter ego of the corporation or parent."); *see also Breckenridge Enters., Inc. v. Avio Alts., LLC*, No. 3:08-CV-1782-M, 2009 WL 1469808, at *3–4 (N.D. Tex. May 27, 2009) (Lynn, J.) (applying the fiduciary shield doctrine to officers of an LLC).

[46] Even if there were no fiduciary shield doctrine protecting corporate representatives, it would not result in personal jurisdiction over Weaver. That would simply result in imputing the same communication and sales pitch contacts to Weaver the Court already imputed to Crossed Keys. But these contacts were fortuitous because Andes happened to be in Texas.

## IV. Conclusion

For the foregoing reasons, the Court **GRANTS** the motions to dismiss and **DISMISSES WITHOUT PREJUDICE** all claims by Andes Capital Financing LLC against Crossed Keys LLC and Brian Weaver.

**IT IS SO ORDERED** this 6th day of August, 2021.

BRANTLEY STARR
UNITED STATES DISTRICT JUDGE